UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
MOHAMMED ABUJAYYAB,

              Plaintiff,

     - against -                **MEMORANDUM AND ORDER**

THE CITY OF NEW YORK, a municipal     15 Civ. 10080 (NRB)
entity; NEW YORK CITY POLICE
DEPARTMENT; LIEUTENANT ROBERT
CORBETT, individually and in his
official capacity as a New York
City Lieutenant; and NEW YORK CITY
POLICE OFFICERS "JOHN DOE 1-3,"

              Defendants.
----------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


      Plaintiff Mohammed Abujayyab brings this action pursuant to

42 U.S.C. § 1983 against the City of New York, the New York City

Police Department ("NYPD"), NYPD Lieutenant Robert Corbett, and

three John Doe defendants.  Plaintiff asserts claims for false

arrest, failure to intervene, excessive force, First Amendment

retaliation, and municipal liability.  Defendants now move for

summary judgment.  For the reasons set forth below, the motion is

granted in part and denied in part.

# I. BACKGROUND

## A. Factual Allegations[1]

On April 29, 2015, plaintiff Mohammed Abujayyab participated in a Black Lives Matter protest against police brutality. Pl.'s 56.1 Stmt. ¶ 1; Defs.'s 56.1 Stmt. ¶ 1; Abujayyab Dep. 31:3, Garman Decl. Ex. B, ECF No. 49-2. Plaintiff joined the protest at 17th Street and Broadway between 8:00pm and 9:00pm and marched north. Pl.'s 56.1 Stmt. ¶¶ 2, 4; Defs.'s 56.1 Stmt. ¶¶ 2, 4. Plaintiff reached Times Square and spent some time in the vicinity of Father Duffy Square, which is a pedestrian area bounded by 46th Street, 47th Street, Broadway, and Seventh Avenue. Pl.'s 56.1 Stmt. ¶¶ 6, 7; Defs.'s 56.1 Stmt. ¶¶ 6, 7. At some point, plaintiff moved from Father Duffy Square onto the street. Pl.'s 56.1 Stmt. ¶ 9; Defs.'s 56.1 Stmt. ¶ 9; Abujayyab Dep. 36:21-37:3. Defendant Lieutenant Robert Corbett was working on the protest detail and was also in the vicinity of Father Duffy Square. Pl.'s 56.1 Stmt. ¶ 8; Defs.'s 56.1 Stmt. ¶ 8.

In Times Square, plaintiff linked arms with two of his fellow protestors: (1) a woman on his left with her hair dyed multiple shades of purple, later identified as "Jessica," and (2) a man on his right, later identified as "M.B.," who was dressed in all black. Pl.'s 56.1 Stmt of Add'l Facts ¶ 17; Civilian Video,

---

[1] The following facts are taken from the parties' Local Rule 56.1 Statements, declarations, and exhibits.

Aboushi Decl. Ex. S, ECF No. 59-23, Garman Decl. Ex. D, ECF No. 49-4 ("Civilian Video"); MSNBC Video at 0:23-30, Aboushie Decl. Ex. R, ECF No. 59-22, Garman Decl. Ex. E, ECF No. 49-5 ("MSNBC Video"); Telemundo Video at 4:54-58, Aboushie Decl. Ex. T, ECF No. 59-24 ("Telemundo Video"). Jessica and M.B. linked arms with their neighboring protestors, who in turn did the same with others, forming a chain. Pl.'s 56.1 Stmt. ¶¶ 10-11; Defs.'s 56.1 Stmt. ¶¶ 10-11.

While plaintiff's arms were linked with his fellow protestors, Lieutenant Corbett approached and appeared to yell at plaintiff from close proximity. MSNBC Video at 0:23. Lieutenant Corbett then threw at least two punches at the left side of plaintiff's face. Pl.'s 56.1 Stmt. ¶ 22; Defs.'s 56.1 Stmt ¶ 22; MSNBC Video at 0:24-30; Telemundo Video at 4:54-58. At some point, plaintiff's hood was pulled from the rear and ripped. Pl.'s 56.1 Stmt. ¶¶ 25-26; Defs.'s 56.1 Stmt. ¶¶ 25-26.

Three videos captured this incident at least in part. The first of these videos, taken by an unknown civilian (the "Civilian Video"), provides context for the action captured in the other two videos, both television broadcasts (the "MSNBC Video" and the "Telemundo Video"). In the Civilian Video, plaintiff first appears on the far left of the screen wearing a blue hoodie zipped up above his chest with a dark t-shirt underneath, green pants, and sneakers. He is in the front row of the protest, standing in an

intersection near Times Square, and his arms are linked with two other protestors. On plaintiff's right is a man dressed in a black sweatshirt and black pants with a black hat. On plaintiff's left is a woman wearing a purple hat. These two have in turn linked with the protestors standing next to them, who in turn have done the same with their neighbors, forming a chain. The front row of the protestors, including plaintiff, are standing several feet in front of a stoplight in the middle of an intersection. The crowd chants "the world is watching." At least a dozen police officers are visible in the vicinity of the protestors, and the police are holding at least three protestors in handcuffs.

The MSNBC Video consists of footage broadcast on the Rachel Maddow Show on the night of the protest. Plaintiff and Lieutenant Corbett first appear on screen at 0:23. Lieutenant Corbett appears to shout at plaintiff from very close proximity, but the words are not audible. Lieutenant Corbett throws his first punch at 0:24 and throws at least two more punches. The portion of the video where Lieutenant Corbett throws punches is repeated at 0:40. It is not entirely clear from this video whether and where Lieutenant Corbett's punches hit Abujayyab. Rachel Maddow describes the incident as "obviously a rough confrontation between protestors and police."

The Telemundo Video captures the incident between Lieutenant Corbett and plaintiff from a slightly different angle. The

relevant footage begins _in media res_ at 4:54, with Lieutenant Corbett throwing two punches at plaintiff that appear to connect with plaintiff's face. The video cuts away from plaintiff at 4:58.

Plaintiff was later removed from the protest line and arrested. Pl.'s 56.1 Stmt. ¶ 31; Defs.'s 56.1 Stmt. ¶ 31. The police applied zip-tie cuffs to plaintiff's wrists, which he alleges were very tight and caused his thumb and fingers to go numb, swell, and turn blue. Pl.'s 56.1 Stmt. ¶ 34; Defs.'s 56.1 Stmt. ¶ 34. These cuffs were applied for approximately one hour. Pl.'s 56.1 Stmt. ¶ 34. When Plaintiff complained about the tightness of the cuffs, officers replaced them with wider half-inch zip-tie cuffs, which alleviated the numbness and swelling. Pl.'s 56.1 Stmt. ¶¶ 35–37; Defs.'s 56.1 Stmt. ¶¶ 35–37. Plaintiff was then taken to an arrest processing center at One Police Plaza, where he was held between one and five hours until he was released without charges between 3:00 a.m. and 4:00 a.m. Pl.'s 56.1 Stmt. ¶¶ 40, 43; Defs.'s 56.1 Stmt. ¶¶ 40, 43. Plaintiff contends that contemporaneous photographs show swelling and bruising to his face, Pl.'s 56.1 Stmt. ¶ 44 (citing Arrest Photograph, Garman Decl. Ex. F, ECF No. 49-6; Photographs, Aboushie Decl. Ex. Q, ECF No. 59-21), while defendants assert that these photographs show no facial swelling or any other injury, Pl.'s 56.1 Stmt. ¶ 44.

Plaintiff participated in the immigration protests at JFK Airport as an interpreter, but has otherwise not participated in

any protests since April 25, 2015 because he has felt deterred from attending protests since this incident.  Pl.'s 56.1 Stmt. ¶ 47; Defs.'s 56.1 Stmt. ¶ 47.  Plaintiff did not seek any medical attention for his physical health after this incident, but he did consult a psychologist.  Pl.'s 56.1 Stmt. ¶ 48; Defs.'s 56.1 Stmt. ¶ 48.

## B. Procedural History

Plaintiff filed this action on December 28, 2015, asserting claims against the City of New York, the NYPD, and John Doe police officers for false arrest, failure to intervene, excessive force, and First Amendment retaliation, as well as a <u>Monell</u> claim against the City.  Compl., Dec. 28, 2015, ECF No. 1.  Plaintiff's motion to amend the complaint to add as defendants NYPD Officers Derek Pasolini and Leona[2] Villegas, who allegedly finished processing plaintiff's arrest and voided his arrest, was denied as futile because they were not the officers who allegedly assaulted and arrested him.  Order, Dec. 15, 2016, ECF No. 18.  Defendants identified Lieutenant Corbett in document disclosure, and the Court granted leave for plaintiff to add Lieutenant Corbett as a defendant.  Order, Feb. 8, 2017, ECF No. 23.  Defendants now move for summary judgment on the grounds that the NYPD and Doe

---

[2]    Plaintiff mistakenly identified Officer Villegas's first name as "Leona" in this earlier briefing, <u>see, e.g.</u>, Letter Mot., Dec. 12, 2016, ECF No. 15, but now asserts that his first name is "Leonard," Pl.'s Mem. of Law, Dec. 18, 2017, ECF No. 58 at 5 n.1.

defendants are not appropriately named as defendants in this action, and seek to dismiss each of plaintiff's claims. Mot. for Summ. J., Nov. 3, 2017, ECF No. 48.

## II. DISCUSSION

### A. Motion for Summary Judgment

Summary judgment is granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' when it 'might affect the outcome of the suit under governing law,'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal citations omitted) (quoting Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005)). "In assessing the record to determine whether there is a genuine issue to be tried, we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010). "Although on summary judgment the evidence must be viewed in the light most favorable to Plaintiffs as the non-moving parties, when there is reliable objective evidence – such as a recording – the evidence may speak for itself." Marcavage v. City of New York, 689 F.3d 98, 110 (2d Cir. 2012) (citing Scott v.

Harris, 550 U.S. 372, 378-81 (2007)).  "Although summary judgment is proper where there is nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony, district courts should not engage in searching, skeptical analyses of parties' testimony in opposition to summary judgment."  Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 20 (2d Cir. 2014) (internal quotations marks and citations omitted).

### 1.   Claims Against the NYPD

As an initial matter, the NYPD is dismissed as a party to this § 1983 action because it "is a non-suable agency of the City." Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007); see N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law.").  The City of New York, rather than the NYPD, is the proper entity for suit here.

### 2.   Claims Against the John Doe Defendants

The John Doe defendants must also be dismissed as parties to this case.  The events that formed the basis for plaintiff's claims occurred on April 29, 2015, Pl.'s 56.1 Stmt. ¶ 1, and plaintiff's excessive force claim accrued on the date of the incident, see Murphy v. Lynn, 53 F.3d 547, 548 n.1 (2d Cir. 1995) (excessive force and false arrest claims accrue at the time of the encounter

with police); <u>Roundtree v. City of New York</u>, No. 15 Civ. 6582 (GHW), 2018 WL 443751, at *3 (S.D.N.Y. Jan. 16, 2018) (failure to intervene claim accrues when the use of force occurred); <u>Davis v. Jackson</u>, No. 15 Civ. 5359 (KMK), 2016 WL 5720811, at *6 (S.D.N.Y. Sept. 30, 2016) (First Amendment retaliation claim accrues at the time the allegedly wrongful conduct took place). The three-year statute of limitations on these claims has therefore run for any John Doe defendants. <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 225 (2d Cir. 2004) ("The statute of limitations applicable to claims brought under §§ 1981 and 1983 in New York is three years."); see <u>Owens v. Okure</u>, 488 U.S. 235 (general or residual personal injury state statute of limitations applies to § 1983 actions); N.Y. C.P.L.R. § 214(5) (three-year general statute of limitations for personal injury).

Plaintiff could not succeed in any attempt to relate back any claims against the John Doe defendants to the filing of the original complaint. "[I]t is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued. Thus, such an amendment may only be accomplished when all of the specifications of Fed. R. Civ. P. 15(c) are met." <u>Barrow v. Wethersfield Police Dep't</u>, 66

F.3d 466, 468 (2d Cir. 1995) (alterations, citations, and internal quotation marks omitted).

Rule 15(c)(1)(C), which allows relation back in the event of a "mistake concerning the proper party's identity," plainly does not apply because "lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity.'" Hogan v. Fischer, 738 F.3d 508, 517-18 (2d Cir. 2013).

Rule 15(c)(1)(A), which allows relation back if "the law that provides the applicable statute of limitations allows relation back," is similarly unhelpful to plaintiff. New York law may allow for relation back for a Section 1983 claim under either New York CPLR Section 203 or Section 1024, neither of which assists plaintiff here. Similarly to Rule 15(c)(1)(C), Section 203 requires a "mistake by plaintiff as to the identity of the proper parties," which cannot be satisfied by a plaintiff's failure to timely name a John Doe defendant. See Cotto v. City of New York, No. 16 Civ. 8651 (NRB), 2018 WL 3094915, at *6 (S.D.N.Y. June 20, 2018); Lopez v. City of New York, No. 15 Civ. 1650 (NRB), 2017 WL 213243, at *3 (S.D.N.Y. Jan. 10, 2017).

Section 1024 requires that a plaintiff "exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name." Hogan, 738 F.3d at 519. When, at the close of discovery, plaintiff "has had ample time to identify" the John Doe defendant but has failed to do so, the

plaintiff "simply cannot continue to maintain a suit against" the John Doe defendant. <u>Coward v. Town & Village of Harrison</u>, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009) (quoting <u>Kearse v. Lincoln Hosp.</u>, No. 07 Civ. 4730 (PAC) (JCF), 2009 WL 1706554, at *3 (S.D.N.Y. June 17, 2009)); <u>see also</u> <u>Keesh v. Artuz</u>, No. 97 Civ. 8417 (AKH), 2008 WL 3166654, at *2 (S.D.N.Y. Aug. 6, 2008) ("Even after discovery, plaintiff has failed to identify the 'John Doe' and 'Jane Doe' defendants. Accordingly, the complaint against them must be dismissed.").

Therefore, the claims here against the John Doe defendants are dismissed.

### 3. Request to Add Officer Pasolini and Villegas as Defendants

On December 15, 2016, the Court denied plaintiff's request for leave to file an amended complaint adding police officers Pasolini and Villegas as defendants because the proposed amendment would be futile. Order, Dec. 15, 2016, ECF No. 18. We stated that plaintiff's allegations made clear that Pasolini and Villegas were not the officers who plaintiff claimed assaulted or arrested him. <u>Id.</u> Plaintiff now reiterates this request in his opposition to the motion for summary judgment. Because plaintiff has not pointed to any new fact or change in controlling law that would

lead us to reconsider our initial decision on this matter, plaintiff's request is again denied.

### 4.  Stand-Alone § 1983 Claim

Defendants correctly argue that plaintiff may not maintain his first cause of action, which purports to be a stand-alone claim under 42 U.S.C. § 1983 for "deprivation of federal civil rights." However, "[b]y its terms, [§ 1983] creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere."  City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985); see also Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999). Thus, plaintiff's stand-alone § 1983 claim must be dismissed, and we will turn instead to plaintiff's claims under § 1983 for excessive force, failure to intervene, false arrest, First Amendment retaliation, and municipal liability based on alleged violations of, inter alia, his rights under the First, Fourth, and Fourteenth Amendments.

### 5.  Excessive Force

The right not to be subject to excessive force derives from the Fourth Amendment for arrestees, the Eighth Amendment for prisoners incarcerated for a criminal conviction, and the Fifth[3] or Fourteenth Amendment for pretrial detainees and individuals who

---

[3]    The Fifth Amendment "applies only to federal actors," so has no application here.  See, e.g., Kingsley v. Hendrickson, 135 S. Ct. 2466, 2477 (2015) (Scalia, J., dissenting).

have not been arrested. *See, e.g.*, *Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018).

As a preliminary matter, plaintiff argues that his excessive force claim should be assessed under the Fourth Amendment rather than the Fourteenth Amendment because the force was used in the context of his arrest or seizure. We must therefore first determine whether plaintiff was seized at the time of Lieutenant Corbett's use of force. *See* *Medeiros v. O'Connell*, 150 F.3d 164, 167 (2d Cir. 1998).

A seizure occurs with a police officer's "laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful." *California v. Hodari D.*, 499 U.S. 621, 626 (1991); *see also* *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968) (a seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen."). A seizure requires "a governmental termination of freedom of movement through means intentionally applied." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (emphasis in original). "A violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful." *Medeiros*, 150 F.3d at 167 (quoting *Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989)).

"Physical restraint or an assertion of authority to restrain a person's freedom of movement by law enforcement officers would, in most instances, constitute a seizure." Pinto-Montoya v. Mukasey, 540 F.3d 126, 132 (2d Cir. 2008). However, physical force by a police officer does not constitute a seizure when it is not part of an effort to restrain the plaintiff. See Rodriguez v. Phillips, 66 F.3d 470, 476-77 (2d Cir. 1995) (holding that plaintiff, who was visiting her son in prison, was not seized when a corrections officer threw her forcefully into a door); Bogart v. City of New York, 13 Civ. 1017 (NRB), 2016 WL 4939075, at *7-8 (S.D.N.Y. Sept. 6, 2016) (no seizure occurred where police officer punched an Occupy Wall Street protester from across a barricade – "[c]rucially, the force allegedly used was not part of an effort to apprehend or subdue [plaintiff]"); Webster v. City of New York, 333 F. Supp. 2d 184, 196 (S.D.N.Y. 2004); Bove v. City of New York, No. 98 Civ. 8800 (HB), 1999 WL 595620, at *5 (S.D.N.Y. Aug. 6, 1999).

Here, plaintiff stated in his deposition that Lieutenant Corbett was "just punching" him and that other officers later pulled him out of the crowd and arrested him. Abujayyab Dep. at 44:4-5, 45:21-46:15; see also Corbett Dep. 93:12-94:23, Aboushie Decl. Ex. 9, ECF No. 59-9. There is no indication in the record that Lieutenant Corbett tried to restrict plaintiff's freedom of movement after punching him. Rather, both plaintiff and Lieutenant

14

Corbett's depositions reflect that Lieutenant Corbett moved away from the scene after punching plaintiff. See Abujayyab Dep. 50:11-16; Corbett Dep. 95:7-13. Because Lieutenant Corbett's punches were not an "application of physical force to restrain movement," plaintiff was not seized at the time when these punches were thrown. See Hodari D., 499 U.S. at 626; Bogart, 2016 WL 4939075 at *8. We therefore consider plaintiff's excessive force claim under the Fourteenth Amendment standard.

Historically, the test for excessive force under the Fourteenth Amendment was whether the use of such force "shocks the conscience." See, e.g., Cty. of Sacramento v. Lewis, 523 U.S. 833, 846-47 (1998); Rochin v. California, 342 U.S. 165, 172 (1952). However, in Edrei v. Maguire, 892 F.3d 525 (2d Cir. 2018), the Second Circuit held that the "objectively unreasonable degree of force" analysis outlined in Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015), applies to all Fourteenth Amendment excessive force claims because "purposeful, knowing or (perhaps) reckless action that uses an objectively unreasonable degree of force is conscience shocking." Edrei, 892 F.3d at 536 (emphasis in original).

Under this Edrei/Kingsley test, we review the following illustrative factors that may bear on the objective reasonableness of the force used: (1) the need for force, including the threat reasonably perceived by the officer and whether the plaintiff was actively resisting, (2) the relationship between the need and the

degree of force used, (3) the extent of the plaintiff's injury, and (4) any effort made by the officer to temper or to limit the amount of force. Kingsley, 135 S. Ct. at 2473; Edrei, 892 F.3d at 537-38. Assessing these factors in the light most favorable to plaintiff, the Court concludes that a reasonable jury could find that Lieutenant Corbett used excessive force against plaintiff.

First, making all inferences in plaintiff's favor, and as substantiated by the video footage, the need for force was minimal. It is uncontested that plaintiff and his fellow protestors were non-violent and that there were a substantial number of police officers monitoring the crowd. At the time of the incident, plaintiff and his fellow protestors appear to have been largely standing in place. While several of the protestors, including plaintiff, were standing in the street and may have been blocking traffic, they did not appear to pose an active threat to any pedestrians or vehicles. See Edrei, 892 F.3d at 537 (finding no imminent threat warranting a significant use of force where protestors were walking in an open street and creating a traffic disruption). Defendants in no way suggest that either plaintiff or his fellow protestors used physical force against Lieutenant Corbett or any other police officers before (or even after) Lieutenant Corbett struck plaintiff in the face. The uncontroverted record is that plaintiff was a peaceful protestor. Moreover, plaintiff's arms were pinned behind his back, linked

with those of other protestors; in this state, it would have been difficult if not impossible for him to be "actively resisting" the police officers.

Defendants' proffered explanation that it was necessary to use force against plaintiff to effectuate the arrest of M.B., the individual next to plaintiff, is unavailing. While it is true that the link between plaintiff and M.B. would need to be severed for the police to arrest M.B., plaintiff alleges that no officer made any effort, verbally or physically, to separate him from M.B. prior to Lieutenant Corbett's use of force. Abujayyab Dep. 44:19-45:10. Instead, according to plaintiff, Lieutenant Corbett charged at him, said "you want to go, let's go," and then punched him in the face. Id. Moreover, if the pressing need was to arrest M.B., then M.B. (and not his neighbor) would have been the natural target of Lieutenant Corbett's force. On plaintiff's version of these facts, the "'severity of the security problem' was minimal, and the 'threat reasonably perceived by the officers' was negligible." Edrei, 892 F.3d at 537 (quoting Kingsley, 135 S. Ct. at 2473).

Second, given the apparent minimal need to use force, the degree of force used by Lieutenant Corbett appears disproportionate. Defendants argue that Lieutenant Corbett's punches were directed at plaintiff's arms and were necessary to break the chain of protestors. However, plaintiff alleges and,

viewed in the light most favorable to plaintiff, the video footage could substantiate, that Lieutenant Corbett threw at least three punches that connected with the left side of plaintiff's face. Pl.'s 56.1 Stmt. ¶ 22; Defs.'s 56.1 Stmt. ¶ 22; MSNBC Video at 0:24-30. Even assuming that it was "necessary" to break the chain, which is contrary to plaintiff's allegations and not readily suggested by the video footage, Lieutenant Corbett could have attempted to do so by employing force short of repeatedly punching plaintiff in the face. See Williams v. City of Mount Vernon, 428 F. Supp. 2d 146, 157–58 (S.D.N.Y. 2006) (rejecting proportionality argument where police officer punched plaintiff in the face "without preceding physical force on plaintiff's part").

While defendants argue, citing Genovese v. Town of Southampton, 921 F. Supp. 2d 8, 21 (E.D.N.Y. 2013), that "somewhat more force may reasonably be required" if someone is "passively resistant," the amount of force used in the face of passive resistance must be proportionally less than that used to counter active resistance, id. Thus, in Genovese, the court found that it was not objectively unreasonable for the police officer defendant to brush the passively resistant plaintiff with his shoulder and elbow in order to secure an assault rifle from her car. Id. By contrast, the danger presented by plaintiff here, who undisputedly was not armed, was significantly less than that presented in Genovese, and the amount of force used by the defendant officer

here was significantly greater.  The proportionality factor thus weighs heavily in plaintiff's favor.

Turning to the third factor, the extent of the injuries suffered, plaintiff alleges that these punches caused swelling and bruising to his face.  While we agree with defendants that contemporaneous photographs of plaintiff do not demonstrate any apparent symptoms of major traumatic injury, see Arrest Photograph, Garman Decl. Ex. F, ECF No. 49-6; Photographs, Aboushie Decl. Ex. Q, ECF No. 59-21, a reasonable jury could find that these photographs exhibit signs of bruising and discoloration, and the Second Circuit has held that bruising alone may constitute injury sufficient to state a Fourteenth Amendment violation.  See Edrei, 892 F.3d at 538 (citing Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987)).  Further, a lack of serious injury alone is not dispositive to our excessive force analysis where the amount of force employed is otherwise objectively unreasonable.  See Hudson v. McMillan, 503 U.S. 1, 7 (1992) (holding, in the Eighth Amendment context, that "[t]he absence of serious injury is therefore relevant to the [excessive force] inquiry, but does not end it"); United States v. Walsh, 194 F.3d 37, 48 (2d Cir. 1999) ("[W]e conclude that the Hudson analysis is applicable to excessive force claims brought under the Fourteenth Amendment as well."); John v. City of New York, No. 14 Civ. 5721 (LDH) (CLP), 2017 WL 976934, at *3 (E.D.N.Y.

Mar. 13, 2017) ("Plaintiff is simply not required to demonstrate that he suffered severe and/or significant injuries . . . .").

As to the fourth and final factor, drawing all permissible inferences in plaintiff's favor, Lieutenant Corbett made no effort to temper or limit the amount of force used. Plaintiff alleges that rather than issue a warning or an order to disperse, Lieutenant Corbett shouted, "You want to go, let's go," and then repeatedly punched plaintiff in the face. Abujayyab Dep. 44:19-45:10.

Relying on law called into question by Kingsley and Edrei, defendants incorrectly argue that we must additionally find that Lieutenant Corbett "'maliciously and sadistically' hit plaintiff in the face 'for the very purpose of causing harm.'" Defs.' Mem. of Law at 13 (citing Tierney v. Davidson, 133 F.3d 189, 199 (2d Cir. 1998)). This subjective inquiry is simply no longer a part of the "objective unreasonableness" test. See Kingsley, 135 S. Ct. at 2472-73; Edrei, 892 F.3d at 534 (holding that the "subjective mental state" referenced in Tierney is not a necessary showing under Kingsley's objective standard).[4]

Reviewing the evidence in the light most favorable to plaintiff, he has presented disputed issues of fact such that a reasonable jury could conclude that Lieutenant Corbett punched him

---

[4]    As discussed below, this consideration is relevant to our analysis of qualified immunity, which is based on the controlling precedent at the time the underlying events occurred.

several times in the face without provocation, and that such action constituted excessive force.

Defendants next argue that Lieutenant Corbett is entitled to qualified immunity on the excessive force claim. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Pearson v. Callahan, 55 U.S. 223, 231 (2009)). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Id. (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)). This standard does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

"[B]ecause officers cannot have fair warning of rights that are not yet established," our qualified immunity analysis must examine the "precedent in existence at the time of the events." Edrei, 892 F.3d at 539 (citing Anderson v. Creighton, 483 U.S. 635, 639 (1987)). Here, that means we must examine whether defendants' conduct violated rights that were clearly established in April 2015, before Kingsley and Edrei had been decided.

Assessing the state of the law at that time means considering, in addition to the factors discussed above, "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973); see Tierney, 133 F.3d at 199. It does not, however, mean that this subjective factor is necessary to find excessive force. As observed in Edrei, 892 F.3d at 534, 537, 540, even in the Glick era, the Second Circuit on multiple occasions found excessive force under the Fourteenth Amendment without ever examining an officer's subjective intent. See Robison, 821 F.2d at 924; Bellows v. Dainack, 555 F.2d 1105, 1106 & n.1 (2d Cir. 1977).

In any event, evidence of subjective intent may be circumstantial, and the video footage here, viewed in the light most favorable to plaintiff, could be interpreted by a reasonable jury as suggesting maliciousness given the disproportionality between the force used and the need for such force. Edrei, 892 F.3d at 540 (citing Blue v. Koren, 72 F.3d 1075, 1084 (2d Cir. 1995)). Further, the Second Circuit had held that this subjective factor was met where plaintiff alleged that the force used "far surpassed anything that could reasonably be characterized as serving legitimate government ends." Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 252 (2d Cir. 2001).

More directly to the point, freedom from the use of excessive force has long been a clearly established constitutional right, and that right is violated when an individual is "punched in the face without provocation" by a police officer, as alleged here. See Harrell, 2013 WL 5439137, at *12. Put differently, no reasonable police officer would have believed that he was entitled under the law to repeatedly punch a protestor in the face without provocation. While a reasonable jury could credit Lieutenant Corbett's alternative explanation for his use of force, that same reasonable jury could, crediting plaintiff's testimony, determine that no reasonable officer could believe that his actions were lawful. See id. Under these circumstances, defendants' motion for summary judgment as to plaintiff's excessive force claim must be denied.

**6. Failure to Intervene**

Plaintiff's failure to intervene allegations are vague, and the basis for this claim is difficult to discern. Interpreted charitably, plaintiff appears to argue that defendants failed to intervene to prevent Lieutenant Corbett from using excessive force and to prevent unnamed officers from applying flex cuffs that were extremely tight.

"A police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use

of force and has sufficient time to act to prevent it." <u>Figueroa</u>
<u>v. Mazza</u>, 825 F.3d 89, 106 (2d Cir. 2016) (citing <u>O'Neill v.</u>
<u>Krzeminski</u>, 839 F.2d 9, 11-12 (2d Cir. 1988)). By failing to
intervene, the officer "becomes a 'tacit collaborator' in the
illegality." <u>Id.</u> However, in order for liability to attach, there
must be "a realistic opportunity to intervene to prevent the harm
from occurring." <u>Anderson v. Branen</u>, 17 F.3d 552, 557 (2d Cir.
1994). A single defendant may not ultimately be held liable both
for using excessive force and for failing to prevent the use of
excessive force. <u>See</u> <u>Buchy v. City of White Plains</u>, No. 14 Civ.
1806 (VB), 2015 WL 8207492, at *3 (S.D.N.Y. Dec. 7, 2015); <u>Cuellar</u>
<u>v. Love</u>, No. 11 Civ. 3632 (NSR), 2014 WL 1486458, at *8 (S.D.N.Y.
Apr. 11, 2014) ("Of course, where the officer is a direct
participant in the allegedly excessive use of force, the failure
to intervene theory of liability is inapplicable.").

Lieutenant Corbett is the only named individual defendant in
this action, and the evidence in the record all points to his
direct participation in the allegedly excessive use of force, such
that a failure to intervene theory of liability would not apply.
MSNBC Video at 0:24-30; Telemundo Video at 4:54-58; Pl.'s 56.1
Stmt. ¶ 22; Defs.'s 56.1 Stmt. ¶ 22. <u>See</u> <u>Cuellar</u>, 2014 WL 1486458,
at *8.
As to plaintiff's handcuffing allegations, there is nothing in the
record that suggests Lieutenant Corbett was in a position to

prevent the application of plaintiff's handcuffs.  Abujayyab Dep.

50:11-16 ("I didn't see [Lieutenant Corbett] afterwards.");

Corbett Dep. 95:7-13 ("I did not know at the time what happened to

Mr. Abujayyab, but later observed in a video that he was pulled

away to another sort of side, it was very hectic, and someone else

arrested him.").  Because plaintiff does not plausibly allege that

Lieutenant Corbett failed to intervene in any of the purported

police misconduct, this claim is dismissed.

### 7.   False Arrest

"A § 1983 claim for false arrest, resting on the Fourth

Amendment right of an individual to be free from unreasonable

seizures, including arrest without probable cause, is

substantially the same as a claim for false arrest under New York

law."  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (internal

citations omitted).  The elements of a false arrest claim under

New York law are:  "(1) the defendant intended to confine [the

plaintiff], (2) the plaintiff was conscious of the confinement,

(3) the plaintiff did not consent to the confinement and (4) the

confinement was not otherwise privileged."  Singer v. Fulton Cty.

Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).

The existence of probable cause to arrest is a complete

defense to a false arrest claim under § 1983.  Jenkins v. City of

New York, 478 F.3d 76, 84 (2d Cir. 2007).  To assess whether

probable cause exists, the Court "examine[s] the events leading up

to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018) (internal quotation marks omitted). Probable cause is assessed by a totality-of-the-circumstances test. Id. at 588. The arresting officer's subjective state of mind is "irrelevant to the existence of probable cause." Devenpeck v. Alford, 543 U.S. 146, 153 (2004). Probable cause "is not a high bar" – it "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Wesby, 138 S. Ct. at 586.

"If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001). "[I]t is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of the arrest." Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006). The arresting officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause," nor must it be "closely related" to the offense charged. Devenpeck, 543 U.S. at 153.

Even absent probable cause to arrest the plaintiff, a police officer will be entitled to qualified immunity if he had "arguable probable cause" to arrest; that is, if "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question <u>could</u> have reasonably believed that probable cause existed in the light of well established law." <u>Cerrone v. Brown</u>, 246 F.3d 194, 202-03 (2d Cir. 2001) (emphasis in original).

Defendants argue that there was probable cause to arrest plaintiff for disorderly conduct pursuant to New York Penal Law § 240.20(7), violation of New York Vehicle and Traffic Law § 1156(a), and taking part in a procession without a permit under New York City Administrative Code § 10-110(a). To defeat a false arrest claim, defendants need only show that there was probable cause for any single charge. <u>See</u> <u>Devenpeck</u>, 543 U.S. at 153; <u>Jaegly</u>, 439 F.3d at 154.

Plaintiff does not and cannot meaningfully contest the fact that he was in violation of New York Vehicle and Traffic Law § 1156(a), which provides that "[w]here sidewalks are provided and they may be used with safety it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway." A violation of this provision does not require the presence of traffic or an intent to obstruct it, but rather "permit[s] law enforcement to restrict pedestrian traffic to sidewalks even where they are simultaneously diverting vehicular traffic." <u>Roper v.</u>

City of New York, No. 15 Civ. 8899 (PAE), 2017 WL 2483813 (S.D.N.Y. June 7, 2017).   And under New York law, the police may legally arrest an individual for a petty offense, including a traffic violation.   See, e.g., United States v. McFadden, 238 F.3d 198, 201-02 (2d Cir. 2001) (citing N.Y. Crim. Proc. Law §§ 140.10(1)(a), 140.10(2); N.Y. Veh. & Traf. Law §§ 225(1), 226(1)); United States v. Scopo, 19 F.3d 777, 781 (2d Cir. 1994) (probable cause for arrest supported by failure to signal while changing lanes in violation of N.Y. Veh. & Traf. Law § 1163(d)); see Atwater, 532 U.S. at 354 ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

Here, the Civilian Video clearly shows plaintiff and his fellow protestors standing and remaining in the middle of an intersection near Times Square, Civilian Video at 0:10-0:33, and plaintiff admits that at some point in the protest, he and many of his fellow protestors moved their protest into the street, Abujayyab Dep. at 37:1-3, which is where he was when he was arrested, id. at 37:21-24.

Plaintiff correctly responds that he was not charged with violating the Vehicle and Traffic Law, but this fact is irrelevant: an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable

cause." <u>Devenpeck</u>, 543 U.S. at 153; <u>see also</u> <u>Whren v. United States</u>, 517 U.S. 806, 813 (1996); <u>Shamir v. City of New York</u>, 804 F.3d 553, 557 (2d Cir. 2015); <u>Jaegly</u>, 439 F.3d at 154 ("[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest.").

Nor are we moved by plaintiff's assertion that we should not consider this probable cause argument because it was most fully fleshed out in a footnote. Defendants articulated the argument that plaintiff's arrest was supported by probable cause in the body of both their opening and reply briefs, <u>see</u> Mem. of Law at 9, Nov. 3, 2017, ECF No. 50; Defs.'s Reply Mem. of Law at 5-6, Jan. 12, 2018, ECF No. 67, and the Court may not ignore controlling law merely because it is cited in a footnote.

**8. First Amendment Retaliation**

Liberally construed, plaintiff alleges two separate grounds for his First Amendment retaliation claim. He asserts that (1) defendants improperly retaliated against his protected speech by arresting him, and 2) Lieutenant Corbett improperly retaliated against him by punching him several times in the face. "To plead a First Amendment retaliation claim, a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's

actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." <u>Dorsett v. Cty. of Nassau</u>, 732 F.3d 157, 160 (2d Cir. 2013).

Plaintiff's First Amendment retaliatory arrest claim fails for at least two reasons. First, Lieutenant Corbett is the only named individual defendant in this action, and there is no evidence in the record that he actually arrested plaintiff. <u>See</u> Abujayyab Dep. 50:11-16; Corbett Dep. 95:7-13. Second, as discussed above, there was probable cause to arrest plaintiff, and the existence of probable cause is a complete defense to a First Amendment retaliatory arrest claim in this Circuit. <u>Curley v. Village of Suffern</u>, 268 F.3d 65, 73 (2d Cir. 2001).[5]

Plaintiff's First Amendment retaliatory use of force claim fares no better. In order to survive summary judgment on a First

---

[5] Other Courts of Appeals are split on this issue. <u>Compare</u> <u>Pegg v. Hermberger</u>, 845 F.3d 112, 119 (4th Cir. 2017), <u>Galarnyk v. Fraser</u>, 687 F.3d 1070, 1076 (8th Cir. 2012), <u>Mesa v. Prejean</u>, 543 F.3d 264, 273 (5th Cir. 2008), <u>and Dahl v. Holley</u> 312 F.3d 1228, 1236 (11th Cir. 2002), <u>with Ford v. City of Yakima</u>, 706 F.3d 1188, 1195-96 (9th Cir. 2013), <u>and Howards v. McLaughlin</u>, 634 F.3d 1131 (10th Cir. 2011). While the Supreme Court granted certiorari on the question of whether "the existence of probable cause defeat[s] a First Amendment retaliatory-arrest claim as a matter of law," <u>Lozman v. City of Riviera Beach, Fla.</u>, Petition for Writ of Certiorari, 2017 WL 2860430, at *i (June 28, 2017), it did not reach this issue on the merits, <u>Lozman v. City of Riviera Beach, Fla.</u>, 138 S. Ct. 1945, 1954 (2018) (holding that resolution of the question granted "is a determination that must await a different case."), and has now granted certiorari on an identical question for the October 2018 term, <u>Nieves v. Bartlett</u>, 2018 WL 1023097 (June 28, 2018) (granting certiorari); <u>see id</u>, Petition for Writ of Certiorari, 2018 WL 1064663, at *7 (Feb. 16, 2018) ("[T]his petition seeks review of the same question presented in <u>Lozman</u> . . . ."); <u>see also</u> <u>Higginbotham v. Sylvester</u>, No. 16-3994, 2018 WL 3559116, at *2 (2d Cir. July 25, 2018) (summary order)

Amendment retaliation claim, a plaintiff must plead specific proof

of improper motivation, Curley, 268 F.3d at 73, which "may include

expressions by the officials involved regarding their state of

mind, circumstances suggesting in a substantial fashion that the

plaintiff has been singled out, or the highly unusual nature of

the actions taken," Blue, 72 F.3d at 1084; cf. Cobb v. Pozzi, 363

F.3d 89, 108 (2d Cir. 2004) (holding, in the employment context,

that "a plaintiff may not rely on conclusory assertions of

retaliatory motive," but rather must produce "some tangible

proof").

While, as discussed above, Lieutenant Corbett's actions may

provide circumstantial evidence that he had the subjective intent

to cause harm, plaintiff has not adequately alleged that these

actions were motivated or substantially caused by plaintiff's

exercise of free speech.  Plaintiff's only proffered evidence of

retaliatory intent is that Lieutenant Corbett stated "You want to

go, let's go," before punching plaintiff in the face.  While this

statement could reasonably be understood as a harbinger of general

belligerence, Lieutenant Corbett is not alleged to have made any

---

(concluding that Lozman left open the question of whether probable cause is a
complete defense to a First Amendment retaliation claim against an individual
police officer).

We decline to attempt to read the tea leaves as to how the Supreme
Court may rule in Nieves:  Unless and until the Supreme Court or Second
Circuit holds otherwise, the law of this Circuit is that probable cause to
arrest is a complete defense to a claim for a First Amendment retaliatory
arrest.  Curley, 268 F.3d at 73.

reference, even obliquely, to plaintiff's protected speech, and nothing about this statement suggests retaliatory animus. See Curley, 268 F.3d at 73.

The mere fact that this incident occurred during a protest is not by itself sufficient evidence of improper motivation to survive defendants' motion for summary judgment. See Lynch v. City of New York, No. 16 Civ. 7355 (LAP), 2018 WL 1750078, at *8-9 (S.D.N.Y. Mar. 27, 2018), appeal docketed, No. 18-1247 (2d Cir. Apr. 27, 2018); Sullivan v. Metro. Transit Auth. Police Dep't, No. 13 Civ. 7677 (NRB), 2017 WL 4326058, at *8 (S.D.N.Y. Sept. 13, 2017); Higginbotham v. Sylvester, 218 F. Supp. 3d 238, 245-46 (S.D.N.Y. 2016), aff'd, No. 16-3994, 2018 WL 3559116 (2d Cir. July 25, 2018); Lebowitz v. City of New York, No. 12 Civ. 8982 (JSR), 2014 WL 772349, at *4 (S.D.N.Y. Feb. 25, 2014), aff'd, 606 F. App'x 17 (2d Cir. 2015). Plaintiff's reliance for this proposition on Case v. City of New York, 233 F. Supp. 3d 372, 390-91 (S.D.N.Y. 2017), and Meyers v. City of New York, No. 14 Civ. 9142 (ALC), 2015 WL 6503825, at *12 (S.D.N.Y. Oct. 27, 2015), both denying motions to dismiss First Amendment retaliation claims, is misguided.[6] At the motion to dismiss stage, the Second Circuit has observed that motive and intent are "both difficult to plead with specificity in a complaint," and therefore "[i]t is sufficient to allege facts from

---

[6]     We note that plaintiff declined to inform the Court that Meyers was vacated and remanded on appeal. See Meyers v. City of New York, 675 F. App'x 93 (2d Cir. 2017).

which a retaliatory intent on the part of the defendants reasonably may be inferred." Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 91 (2d Cir. 2002). By contrast, "[s]pecific proof of improper motivation is required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim." Curley, 268 F.3d at 73 (citing Blue, 72 F.3d at 1082-83).

Moreover, there were dozens of individuals taking part in the same protest against police brutality, and plaintiff has presented no evidence as to why the police officers would target him as opposed to any other protestor. See Sullivan, 2017 WL 4326058, at *8 (granting summary judgment where plaintiff was one among a number of similarly situated protestors filming events and there was no evidence that the police otherwise arrested protestors indiscriminately); Higginbotham, 218 F. Supp. 3d at 245-46 ("[T]he video and picture evidence demonstrate that there were dozens of camerapersons recording the police interactions with protestors at the very moment that [plaintiff] was doing so. On these facts, no reasonable jury could conclude that defendant officers targeted [plaintiff], and no other cameraperson, for exercising his First Amendment rights.").

Accordingly, summary judgment is granted to the defendants on the First Amendment retaliation claim.

### 9. __Monell__ Claim

As a preliminary matter, it should be noted that plaintiff did not explicitly assert a separate claim for municipal liability, but rather included factual allegations in his complaint about the policies and customs of the City of New York. See Am. Compl. ¶¶ 53-58, Mar. 31, 2017, ECF No. 29. Again treating plaintiff charitably, we have interpreted these allegations as a claim for municipal liability under <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 659 (1978).

The Court granted defendants' motion to bifurcate <u>Monell</u> discovery on February 8, 2017. Order, Feb. 8, 2017, ECF No. 23. Because plaintiff has not yet taken discovery related to his <u>Monell</u> claim, defendants move to dismiss this claim under Federal Rule of Civil Procedure 12(c). On a motion for judgment on the pleadings, we accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. <u>Jaffer v. Hirji</u>, 887 F.3d 111, 114 (2d Cir. 2018). "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" <u>Graziano v. Pataki</u>, 689 F.3d 110, 114 (2d Cir. 2012) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

A municipality cannot be liable under section 1983 under the doctrine of <u>respondeat superior</u>. <u>Roe v. City of Waterbury</u>, 542 F.3d 31, 36 (2d Cir. 2008). Instead, "plaintiff must demonstrate

that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." Id. at 37. To hold a municipality liable under 42 U.S.C. § 1983, a plaintiff must establish (1) the existence of a municipal policy, custom, or practice, which (2) caused the alleged violation of the plaintiff's constitutional rights. Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012). For a practice to justify imposing municipal liability, it must be "so 'persistent or widespread' as to constitute 'a custom or usage with the force of law.'" Green v. City of New York, 465 F.3d 65, 80 (2d Cir. 2006) (quoting Patterson v. Cty. of Oneida, 375 F.3d 206, 226 (2d Cir. 2004)). "[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991).

Plaintiff asserts that his constitutional rights were violated by the City's "indiscriminate and illegal assault and mass arrest tactics" and its policy or practice "to effectively chill . . . all individuals' exercise of their First Amendment protected rights to free speech and association." Am. Compl. ¶¶ 53-58.

Other than vaguely alluding to "the 2004 RNC, Occupied [sic] Wall Street protest, and Protest as a result of the killing of Eric Gardner, Tamir Rice and Michael Brown due to police

brutality," Am. Compl. ¶ 107, plaintiff's amended complaint does not mention any specific incidents where the City allegedly either used assault and mass arrest tactics or suppressed individuals' First Amendment rights other than the single night when he was arrested. This lack of additional evidence dooms plaintiff's Monell claim. Courts in this Circuit have consistently held that allegations of a single incident, or even a few isolated incidents, will not suffice to permit the inference of a broader municipal policy or custom, even on a motion to dismiss. Jones v. Town of East Haven, 691 F.3d 72, 85 (2d Cir. 2012) (three similar incidents "fell far short of showing a policy, custom, or usage of officers"); Giaccio v. City of New York, 308 F. App'x 470, 471-72 (2d Cir. 2009) (Monell claim dismissed where plaintiff could identify only four incidents); Price v. City of New York, 2018 WL 3117507, at *19 (S.D.N.Y. June 25, 2018) ("Plaintiff's allegations of three similar constitutional violations do not allow the Court plausibly to infer the existence of a widespread custom or practice that can be attributed to the City."); Calicchio v. Sachem Cent. Sch. Dist., 185 F. Supp. 3d 303, 316-17 (E.D.N.Y. 2016) (dismissing Monell claim based on evidence of only two similar incidents and observing that "courts in this Circuit have rejected the notion that two, three or even four incidents will support such an inference"). This reasoning is particularly salient when a plaintiff, such as Abujayyab here, does not allege the involvement

in his arrest of any actors at the policy-making level. <u>See</u>
<u>Ricciuti</u>, 941 F.2d at 123.

Plaintiff's contention that the NYPD employs "indiscriminate
and illegal assault and mass arrest tactics" based solely on the
experience of his own arrest does not permit a plausible inference
of the existence of a municipal policy or practice that can be
attributed to the City. Plaintiff's <u>Monell</u> claim is therefore
dismissed.

### III. CONCLUSION

For the foregoing reasons, defendants' motion for summary
judgment is granted in part and denied in part. The City of New
York, NYPD, and Doe defendants are dismissed from this action.
Plaintiff's renewed request to amend his complaint to add Officers
Pasolini and Villegas is denied. Plaintiff's claims for failure
to intervene, false arrest, First Amendment retaliation, and
municipal liability are dismissed. Plaintiff's sole remaining
claim is for excessive force against Lieutenant Corbett. The Clerk
of Court is respectfully directed to terminate the motion pending
at ECF No. 48.

The parties are directed to appear for a pretrial conference
on Tuesday, October 2, 2018 at 3:30 p.m. in Courtroom 21A, 500
Pearl Street, New York, NY 10007.


**SO ORDERED.**

37

Dated:     New York, New York
           August 20, 2018

                                    _____
                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE

38

Counsel for Plaintiff:      Tahanie Ahmad Aboushi
                              The Aboushi Law Firm

Counsel for Defendants:    Ashley Rebecca Garman
                              New York City Law Department